IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JEREMIAH JASON McGREGOR #1582673 | § | |
| VS. | § | CIVIL ACTION NO. 6:12CV391 |
| MANAGEMENT TRAINING CORPORATION SENIOR VICE PRESIDENT WASHINGTON, ET AL. | § § | |

MEMORANDUM OPINION AND
ORDER OF PARTIAL DISMISSAL

Plaintiff Jeremiah Jason McGregor, an inmate confined at the Moore Unit of the Texas prison system, proceeding *pro se* and seeking to proceed *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

I.  **FACTS**

The complaint was filed on June 20, 2012. On October 23, 2012, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Lorie Parker, Warden Dwayne Dewberry and Gary Wright, M.D., testified under oath about prison policies and

1

information contained in the Plaintiff's prison records.

In his complaint, Plaintiff contends that on or about October 31, 2011, he was part of a work detail under supervising maintenance officers James Ross and Harold Barnes in the Moore Unit gym. He was ordered to get up in a scissors lift to change a ball valve in a gas line or connection. He alleges that when he arrived at the location, he saw that the power and gas were still on. He also alleges he asked Defendants Ross and Barnes if he should turn the power and gas off. He further alleges that Defendants told him "No, just be fast about it," or words to that effect. When he began to remove the ball gas valve, it "exploded in Plaintiff's face, and burst into flames, burning Plaintiff's face and arms." *See* Complaint at PageID #6. Plaintiff and another inmate were stuck on the scissor lift for a period of time before they were able to lower it. He asserts that the ball valve should have been "red tagged," or placed out of commission, before he was ordered to work on it.

Plaintiff does not state his actions after this mishap in his Statement of the Claim except to say that it took him about three hours before he went to medical. However, fellow inmate Henry Mathis, who provided an affidavit that is attached to Plaintiff's complaint, stated that:

> After the fire was put out, and Mr. Ross took me to turn the gas off, he told me that he really messed up, that he should have listen to us, and turn the gas and power off. After this, [Plaintiff] was ordered to get back into the lift, and remove the burnt up heater. We then were allowed to clean up, and go eat. Only after all this, did [Plaintiff] get to go see medical.

*See* Mathis Aff., Complaint at PageID #14. Mathis also stated that although the flame from the mishap burned the left side of Plaintiff's upper body, the only injury he pointed out was that Plaintiff lost hair from his eyebrows and top of his head. This injury was confirmed by another inmate, Gerardo Rascon, who also submitted an affidavit. *See* Rascon Aff., Complaint at PageID #15 ("As [Plaintiff] was removing the gas valve, it then ignited in his face, burning his hair and eye brows

2

off."). Plaintiff himself only asserts that he suffered "long term mental damage" as a result of the mishap. *See* Complaint at PageID #5. He also alleges that Defendant Ross lost his job over the incident. *Id*.

During the *Spears* hearing, Plaintiff affirmed and clarified these events. He testified that there had been a work order in existence for about a year to replace the ball valve in the gas line. He stated that gas was escaping or flowing past the valve. The work to be involved was to change it out and install a new valve. When he and another inmate were on the scissors lift and noted that power and gas were still on, he asked whether they should be shut off before proceeding. He identified Defendant Ross as the Maintenance Officer in charge of the work (including plumbing, HVAC and related systems) and of the work detail (and was therefore Plaintiff's "boss" for the work), and it was he who told them to proceed and "just be fast about it." Defendant Barnes is an electrician who was present and "agreed with Ross" without intervening.

Plaintiff testified that, aside from Defendants Ross and Barnes, he sued all of the remaining Defendants essentially because they are in supervisory positions. He sued Management Training Corporation's ("MTC") Senior Vice President Odie Washington because he "hands down procedures and rules for employees" of MTC and "oversees everything." He sued Senior Warden Debbie Ruthven in her supervisory capacity as warden of the Moore Unit. He sued Major Wade Colley and Captain Timothy Latham in their supervisory positions as senior correctional officers over the rank-and-file correctional officers who reacted to the incident. He sued Maintenance Supervisor Johny Lewis because he is responsible for all maintenance at the Unit. He finally sued Celeste Byne as a Director at the Unit who Plaintiff characterized as a liaison between the Texas Department of Criminal Justice ("TDCJ") and MTC and who "oversees MTC and meets TDCJ's standards and

3

procedures" and who has "oversight of policies." Plaintiff also clarified that Eddie Brewer, who is reflected on the docket as a "Movant," is not a Defendant or otherwise a party to this lawsuit, but is his prisoner legal assistant who (improperly) filed a motion under his own signature on Plaintiff's behalf. *See* docket entry #15, stricken by Order at docket entry #28.

Warden Dewberry testified he had no records on Plaintiff's incident, but also testified that firing Defendant Ross was consistent with TDCJ policy if he did not follow safety procedures and would have been done in the disciplinary process.

Dr. Wright testified that Plaintiff's medical record reflected that he had been seen by medical department personnel about two hours after the incident. The record showed Plaintiff had no physical injuries and received no treatment. However, he also testified that Plaintiff made a sick call request on April 21, 2012, complaining of sleep disorders, dreams and flashbacks he related to the gas explosion incident. Finally, Dr. Wright testified that Plaintiff is now on anti-anxiety medications.

Following Dr. Wright's testimony, Plaintiff clarified that after his exposure to the explosion, his face and skin was reddened "like a sunburn" and that hair and eyebrows were burnt off the left side of his head. He further testified that after the explosion, and before he was taken to medical, Defendant Ross escorted him to the barber and had his hair and eyebrows cut. His main injury is psychological and he testified that aside from his dreams, he has occurrences during his regular routine. Things such as the smell of gas and hearing alarms trigger his flashbacks or other psychological reaction. He asserted he has been diagnosed with post-traumatic stress disorder ("PTSD") and anxiety as a result of the gas incident.

Regional Grievance Supervisor Parker then testified that Plaintiff had exhausted his claims,

though she stated that his Step 1 and Step 2 grievances only mentioned Defendant Ross by name. She presented his Grievance, Medical and Classification Records for the Court's review. Plaintiff then agreed that the Court could review these records as part of the case.

Plaintiff also asserted that he had been retaliated against because he pursued his grievances and/or because of the instant lawsuit. He specifically testified that he had been written a disciplinary case on a claim of making certain statements to a correctional officer, but that he pleaded not guilty and was found not guilty as a result of a hearing. Nonetheless, he asserts, he is aware that there is a record that has been manually changed from a finding of "not guilty" to "guilty" and he is concerned of its effect on his record. Having found the claims in the instant case involving injury resulting from an alleged safety violation to be fairly well defined, the Court informed Plaintiff that if he wished to pursue a claim of retaliation he should file a separate lawsuit on that ground. Plaintiff agreed. He seeks relief in this lawsuit in the form of compensatory, punitive and nominal damages, and attorney fees and costs of the action. *See* Complaint at PageID #5.

## II.    DISCUSSION AND ANALYSIS

The Court first notes that after the initial review of the complaint and before Plaintiff consented to Magistrate Judge jurisdiction, the Court issued a Report and Recommendation to dismiss the lawsuit as sounding in negligence, which is not actionable under § 1983. *See* docket entry #7. Following Plaintiff's objections, the Court withdrew that Report and Recommendation in order to conduct the *Spears* hearing described above. *See* docket entry #18. Having reviewed the complaint and testimony elicited at the *Spears* hearing in that light, the Court is of the opinion that certain Defendants should be dismissed and the case allowed to proceed against the remaining Defendants.

Plaintiff's claims focus on the actions of Defendants Ross and Barnes on the date of the incident. Both were in supervising positions over Plaintiff and his inmate co-workers, with Defendant Ross the "boss" of the work detail and Defendant Barnes a Unit employee with at least inherent responsibility for safety. Plaintiff alleges he clearly articulated a potential safety concern with the presence of gas at a leaky gas valve and electric power being energized at the locale. He further alleges he asked Defendants if the gas and power should be shut off while the work of replacing the ball valve proceeded and was told, "No, just be fast about it," or words to that effect.

If true, these allegations state a claim for indifferent indifference to Plaintiff's safety and/or a failure to protect him from harm. Both sound under the Eighth Amendment. Therefore, both Defendants Ross and Barnes must answer the complaint.

On the other hand, Plaintiff sued the remaining Defendants not because of any personal involvement in the incident, but because they occupy supervisory positions in different capacities. In other words, he is suing them on a theory of *respondeat superior*. This include Defendants Washington, Ruthven, Colley, Latham, Lewis and Byne. However, as the Court noted in the alternative in the Report and Recommendation issued on July 2, 2012 (*see* docket entry #7 and above), the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). There, the

Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge of or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

Further, the Fifth Circuit has held that a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). These two conditions are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting. In this case, Plaintiff has alleged nothing in his complaint in his testimony during the *Spears* hearing to indicate that Defendants Washington, Ruthven, Colley, Latham, Lewis and/or Byne had any personal involvement in the alleged violation of his constitutional rights. Even to the extent that Plaintiff asserts a "failure to train" claim in this case against certain of these supervisory Defendants, such a claim could only be successful if it led to the "highly predictable consequence" of injury. *Roberts v. Cole*, 2012 WL 2052956, at *1 (5th Cir. May 11, 2012) (per curiam) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849050 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 66, 178 L. Ed. 2d 22 (2010)). Plaintiff has made no allegations to support such an inference. Finally, to the extent that he alleges that one or more of these Defendants may have taken personal action in terms of retaliation against him, Plaintiff will file a lawsuit on that issue if he decides to do so.

Accordingly, it is hereby

Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge of or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

Further, the Fifth Circuit has held that a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). These two conditions are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting. In this case, Plaintiff has alleged nothing in his complaint in his testimony during the *Spears* hearing to indicate that Defendants Washington, Ruthven, Colley, Latham, Lewis and/or Byne had any personal involvement in the alleged violation of his constitutional rights. Even to the extent that Plaintiff asserts a "failure to train" claim in this case against certain of these supervisory Defendants, such a claim could only be successful if it led to the "highly predictable consequence" of injury. *Roberts v. Cole*, 2012 WL 2052956, at *1 (5th Cir. May 11, 2012) (per curiam) (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849050 (5th Cir. 2009), *cert. denied*, 131 S. Ct. 66, 178 L. Ed. 2d 22 (2010)). Plaintiff has made no allegations to support such an inference. Finally, to the extent that he alleges that one or more of these Defendants may have taken personal action in terms of retaliation against him, Plaintiff will file a lawsuit on that issue if he decides to do so.

Accordingly, it is hereby

**ORDERED** that the claims against Defendants Washington, Ruthven, Colley, Latham, Lewis and Byne are **DISMISSED** and these Defendants are **DISMISSED** from this lawsuit. It is further

**ORDERED** that Defendants Ross and Barnes must **ANSWER** the claims in the complaint on the issue of violating Plaintiff's Eighth Amendment right against deliberate indifference to his safety and/or Defendants' alleged failure to protect him from harm. An Order to Answer and Scheduling Order will be issued separately.

So **ORDERED** and **SIGNED** this **29** day of **October, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE